## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## NORTHERN DIVISION

**JAMELA CARTHAN, as Natural Mother, Guardian and
Next Friend of J.D.C., a Minor, and as Personal Representative
on Behalf of the Wrongful Death Beneficiaries of
THE ESTATE OF EDWARD BOYD, Deceased**                    **PLAINTIFF**

**v.**                                    CIVIL ACTION NO. 3:25-cv-163-CWR-ASH
                                          _____

**MANAGEMENT & TRAINING CORPORATION,
and JOHN AND JANE DOES 1-100**                            **DEFENDANTS**

---

## PLAINTIFF'S ORIGINAL COMPLAINT

---

### *Jury Trial Demanded*

1.      This Complaint is brought by Jamela Carthan, Natural Mother, Guardian and Next Friend of J.D.C., a Minor, and Personal Representative on Behalf of the Wrongful Death Beneficiaries of The Estate of Edward Boyd, by and through undersigned counsel, against Defendants Management & Training Corporation, and John and Jane Does 1-100.

### JURISDICTION AND VENUE

2.      Jurisdiction is appropriate in federal court pursuant to 28 U.S.C. §§ 1343, 1331, and 1332. Original subject matter jurisdiction is invoked under § 1331 since a federal question is raised under 42 U.S.C. § 1983, and the 8th and 14th Amendments to the United States Constitution; jurisdiction is invoked under § 1332 as Plaintiff and Defendant are citizens of different states and the claim is more than $75,000. Supplemental and pendent jurisdiction for state law claims related

to original jurisdiction claims is raised pursuant to 28 U.S.C. § 1367(a) and *F.R.C.P.* 18(a).

3.    Venue is proper pursuant to 28 U.S.C. § 1391(b), as all substantial acts and/or omissions occurred in Lauderdale County, Mississippi, within the Southern District of the United States District Court, Northern Division.

## PARTIES

4.    Jamela Carthan (hereinafter, "Plaintiff") is an adult resident citizen of Hinds County, Mississippi. Her current residence is 1153 Lucedale Street, Jackson, Hinds County, Mississippi 39209. Plaintiff, as natural mother, guardian, and next friend of J.D.C., a Minor, the Decedent's surviving natural daughter, brings this action on behalf of the wrongful death beneficiaries of Edward Boyd.[1]

5.    At all times material to this Complaint, Edward Boyd (hereinafter, "Decedent") was an adult resident citizen of Mississippi, and a prisoner incarcerated at East Mississippi Correctional Facility ("EMCF"), Meridian, Lauderdale County, Mississippi. Substantial acts, omissions, and events which caused Decedent's death took place in Lauderdale County. Plaintiff, as personal representative, brings this action pursuant to the wrongful death and survival statute, *Miss. Code Ann.* §§ 11-7-13 and 91-7-233.

6.    Management & Training Corporation (hereinafter, "MTC" or "Defendant") is a national for-profit prison operator incorporated in Delaware with its headquarters in Utah. MTC is the third-largest prison management company in the United States, operating 21 correctional facilities in the country, with 17 state correctional department contracts and 7 federal correctional agency contracts. MTC contracted with Mississippi Department of Corrections ("MDOC") for the

---

[1] An heirship determination is pending. Decedent had three (3) minor children prior to his death. Plaintiff will amend this Complaint to allege the true names and addresses of the surviving heirs and wrongful death beneficiaries of the Decedent at a later time.

Original Complaint

management and oversight of its prisons' daily operations, under which it had the responsibility to provide humane care and treatment consistent with all constitutional and ACA standards. At all times material herein, MTC managed East Mississippi Correctional Facility, and the acts, omissions and events giving rise to this Complaint occurred under MTC's management. MTC is subject to the *in personam* jurisdiction of the Court by service of process upon its appointed registered agent, CT Corporation System, at 645 Lakeland East Dr., Suite 101, Flowood, Rankin County, Mississippi 39232.

7.      John and Jane Does 1-100 (hereinafter, "Doe Defendants"), are unknown individuals, and/or entities liable to Plaintiff for the acts and omissions as alleged herein. Currently, Plaintiff is ignorant as to the identities of the Doe Defendants, who are unknown MTC officers, employees, agents, and or servants. Plaintiff will amend this Complaint to allege their true names and that each of the fictitiously named Defendants are responsible in some manner and liable to Plaintiff by reason of negligence, wanton and reckless misconduct, breach of warranty and/or another manner whether alleged herein or not, and by such wrongful conduct, each Defendant proximately caused the injury and damage complained of herein. Plaintiff, upon information and belief, asserts Doe Defendants were officers, agents, servants, and or employees of Defendant and acted with permission and consent within the course and scope of said agency and employment.

8.      At all times material, Defendants were acting under the color of the law, statutes, customs, ordinances, and usage of the State of Mississippi, pursuant to its contract with MDOC.

## FACTS

### *History of Understaffing, Gang Violence, and Inmate Assaults at EMCF*

9.      Plaintiff incorporates all allegations in Paragraphs 1 through 8 hereinabove.

10.      On or about March 19, 2024, Edward Boyd ("Decedent") was brutally attacked by

inmates affiliated with the Gangster Disciple Nation at EMCF. Decedent's gang-attack and resulting death was foreseeable due to systemic issues at EMCF. Decedent's death reflects Defendants' continuing failure to protect inmates from harm, failure to maintain sufficient staff, failure to adequately train and supervise staff, and failure to properly manage the gang population, or Security Threat Groups ("STG"), at EMCF.[2]

11.    Formal lawsuits[3] put Defendants on notice of their ongoing failure to protect inmates and maintain adequate staffing and training. Dating back to 2013, the facts and circumstances of prior gang-assaults and inmate deaths are virtually *"copy and paste"* of one another, including the Decedent's.

12.    EMCF was designated to house the State's most severe inmates and to provide them with a high level of care. *For over a decade,* Defendants have repeatedly been put on notice of rampant gang violence and staff inadequacies resulting in harm and death to inmates. Defendants had prior documented notice and knowledge of EMCF's severe understaffing, inadequate training and supervision, pervasive violence, gang mismanagement, and contraband flow, all of which contributed to a heightened risk of harm and death to inmates, including Decedent.

13.    Dating back to 2011, violent incidents at EMCF were so common that Lauderdale County Sheriff Billy Sollie asked state officials to assign a full-time investigator to handle EMCF

---

[2] Understaffing at MTC's prisons have been an ongoing issue for years. In November 2022, Mississippi State Auditor Shad White announced that his office was demanding nearly two million ($2,000,000) dollars from MTC for failing to have adequate staff on duty at Marshall County Correctional Facility. The Marshall Project published that MTC should have repaid $950,000 for vacant positions and unfilled shifts at EMCF between 2013 and 2019. https://www.themarshallproject.org/2020/12/09/no-show-prison-workers-cost-mississippi-taxpayers-millions.

[3] *See Dockery, et. al v. Epps, et. al*, S.D. Miss., No. 3:13-cv-326-TSL-JMR; *Gipson v. Management & Training Corporation et al*, S.D. Miss., No. 3:16-cv-00624-DPJ-FKB; *Buckley et al v. Management & Training Corporation et al*, S.D. Miss., No. 3:22-cv-00379-KHJ-MTP; *Marsh v. Management & Training Corporation et al*, S.D. Miss., 3:24-cv-00339-TSL-MTP; *Gregory Rivers v. Management & Training Corporation et al.*, S.D. Miss., 3:25-cv-156-CWR-LGI. See also *Walker v. Management & Training Corporation et al*, S.D. Miss., No. 5:14-cv-00098-DCB-MTP; *Bell v. Management & Training Corporation et al*, S.D. Miss., No. 5:16-cv-00039-DCB-MTP; *Hernandez v. Management & Training Corporation et al*, S.D. Miss., No. 5:16-cv-000057-KS-MTP; *Mauk v. Management & Training Corporation et al*, S.D. Miss., No. 5:18-cv-000068-DCB-MTP.

Original Complaint

incidents because EMCF was exhausting the sheriff's department's resources.

14.    Despite years of instability evidenced by high rates of inmate assaults and deaths, lockdowns, contraband, and gang networking, Defendants *continued* to operate EMCF under such dangerous conditions, showcasing a deliberate indifference to the risk of harm and death to inmates. Defendants' *de facto* policies of understaffing EMCF with an insufficient number of adequately trained and/or supervised correctional officers and mismanaging gang populations directly resulted in harm to inmates, specifically the Decedent.

15.    Proper supervision of inmates to prevent harm is impossible without sufficient staff. Defendants consistently staffed EMCF with poorly trained and supervised officers, resulting in negligent practices that endangered inmates. Defendants' *de facto* policy of understaffing EMCF with inadequately trained and supervised guards was negligent and grossly negligent and was implemented with deliberate indifference to the inmates, specifically the Decedent.

16.    Sound correctional policy mandates that prison officials institute programs to prevent, identify, and manage gang populations. Defendants failed to institute such programs, directly resulting in Decedent's death and Plaintiff's injuries. Alternatively, if Defendants did institute any such programs, Defendants failed to apply its measures, or applied such measures with negligence and gross negligence, resulting in Decedent's death and resulting damages.

17.    In 2013, a federal class action lawsuit against EMCF alleged unconstitutional conditions of confinement in violation of inmates' 8th Amendment rights, specifically, failure to maintain adequate staff, failure to remove weapons and from prisoners, failure to ensure the proper function of safety equipment, and failure to remove prisoners from potentially dangerous situations.[4] Twelve (12) years later, the same issues persist.

---

[4] *Jermaine Dockery, David Thompson, Jeffrey Covington, Joseph Osborne, Courtney Galloway, Phillip Fredenburg, John Barrett, Tafforest Chandler, Derrick Hayes, Eric Ward, Christopher Lindsey, Dexter Campbell, Alvin Luckett,*

Original Complaint

18.    Defendants' chronic lack of correctional officers and poor staff training resulted in an environment where violence was commonplace. According to expert witness Eldon Vail, EMCF did not have enough officers; *most of their problems stem from that issue.*[5] (emphasis added). According to EMCF former Warden Frank Shaw, he *could not guarantee that the prison was capable of performing its most basic function*; guards "do their best" to keep inmates in their cells; and mandatory security posts are filled "if at all possible."[6] (emphasis added).

19.    In 2014, MTC's EMCF Captain of Security, Matthew Naidow, testified EMCF was "worse than any prison" in which he had worked; he described it as "top 10" in the country for violence. Naidow testified that officers were normally young, female, and easily manipulated by gang members, and staff turnover rates made it difficult to maintain adequately trained guards. Naidow illustrated first-hand knowledge of officers failing to conduct counts and security checks, describing a "fiasco," with inmates moving themselves from one cell to another. According to Naidow, based on 30 years' experience, *failing to do proper counts and security rounds increases inmate violence* because inmates had "more time to plan." United States District Judge Barbour relied heavily on Naidow's testimony in certifying the *Dockery* class action:

> Plaintiffs also submit the deposition of Matthew Naidow, who is the captain of security at EMCF, and who testified, *inter alia*, that prisoner-on-prisoner violence is common place, that security officers are poorly trained, and that staff has aided inmate violence by opening cell doors and by failing to intervene when prisoners are being assaulted.

*Dockery, et al v. Epps, et al*, S.D. Miss., 3:13-cv-326.

---

*James Vann, Benjamin McAbee, and Anthony Evans, on Behalf of Themselves and All Others Similarly Situated v. Christopher Epps in his Official Capacity as Commissioner of the Mississippi Department of Corrections, Gloria Perry in her Official Capacity as Chief Medical Officer for the Mississippi Department of Corrections, Archie Longley in his Official Capacity as Deputy Commissioner for Institutions of the Mississippi Department of Corrections*, S.D. Miss., 3:13-CV-00326.

[5] *Dockery, et. al v. Epps, et. al*, S.D. Miss., 3:13-cv-326.
[6] *Dockery, et. al v. Epps, et. al*, S.D. Miss., 3:13-cv-326.

Original Complaint

20.    In 2014, Charles McGrew's murder by his cellmate put Defendants on further notice that failure to conduct required checks resulted in harm and death to inmates. McGrew's death revealed the Defendants' ongoing systemic-wide negligence and deliberate indifference to the safety and well-being of inmates at EMCF.[7]

21.    In 2017, MTC's then-Regional Vice President Marjorie Brown acknowledged in her deposition that staff was required to make security checks approximately every 30 minutes to ensure inmates are safe, alive, and well. Defendant's expert, Stephen Huffman, testified that inmate altercations happen any time, especially in cells, highlighting the importance of counts and checks. *Defendant's own expert agreed that MTC acted with deliberate indifference by not requiring officers to conduct proper rounds and security checks.* In thirty-seven (37) years of working in corrections, Huffman had not seen a facility continue noncompliance in conducting counts for such a long period of time, and as far as what was reported on the monitoring worksheet, that was not a proper way to run a prison.[8]

22.    In 2018, Eldon Vail wrote in his expert report, "…due to the lack of adequate security staffing throughout the prison, EMCF remains an extraordinarily dangerous prison, and continues to place all prisoners at substantial risk of harm." Defendants had *actual notice* of EMCF's dangerous yet continued to operate with insufficient number of correctional officers and inadequately trained staff, resulting in harm and death to inmates, specifically the Decedent.

23.    Defendants were objectively and subjectively aware of understaffing, failure to train and supervise staff, widespread gang violence, dysfunctional locking mechanisms,

---

[7] *Sandra Fay Gipson, as Administratrix of, and Personal Representative on Behalf of the Wrongful Death Beneficiaries of the Estate of Charles Elliot McGrew, Deceased v. Management & Training Corporation and John and Jane Does 1-100*, S.D. Miss., 3:16-cv-624-DPJ-FKB.

[8] *Gipson v. Management & Training Corporation, et al*, S.D. Miss., No. 3:16-cv-624-DPJ-FKB, Deposition of Stephen J. Huffman, July 28, 2017, Vol. II pp. 38-39.

Original Complaint

contraband, and inmate violence. With deliberate indifference to the safety and well-being of inmates at EMCF, Defendants ignored these issues and failed to protect the inmates from harm and death, specifically the Decedent. As a direct result of Defendants' deliberate indifference, Edward Boyd died, and Plaintiff suffered damages as alleged herein.

### *Knowledge of Risk of Harm*

24.     Plaintiff incorporates all allegations in Paragraphs 1 through 23 hereinabove.

25.     Upon information and belief, Decedent was affiliated with the Vice Lord STG. Defendants knew or should have known that Decedent was at risk of harm due to MTC's documented history of violence and mismanagement of gang populations at EMCF. Defendants failed to protect Decedent from harm, failed to train and supervise staff to manage STG populations and assaults, and subjected Decedent to cruel and unusual punishment. As a result, Edward Boyd died on or about March 19, 2024.

26.     Decedent's attack was *not* an isolated or random incident. MTC's documented history of hiring correctional officers who become enmeshed with the gang population has resulted in compromised guards who allow, facilitate, or turn a blind eye to inmate gang-assaults. Upon information and belief, Defendants and their employees, particularly Correctional Officer Bell and Duncan, knew or should have known that Vice Lords planned to attack Decedent, or that such an attack was imminent. Defendants' negligence and deliberate indifference to the safety and well-being of inmates at EMCF, specifically Decedent, directly resulted in Decedent's death, which was foreseeable and preventable.

27.     Even when guards do witness inmate violence, they often fail to intervene due to inadequate training and supervision, or due to an insufficient number of guards to prevent and or stop the violence. At other times, guards fail to intervene to prevent harm to inmates because

guards are members of gangs or are beholden to gangs or inmates who carry out violence. To the extent any guards witnessed the actions that precedent the Decedent's attack, they failed to intervene or call for help or do anything about it to protect Decedent from harm.

28.    Defendants were subjectively aware of a substantial risk of harm to the Decedent and disregarded that risk. Defendants failed to take the necessary precautions and safety measures to protect Decedent from harm and created a breeding ground for violence. Defendants' actions and inactions constitute negligence, gross negligence, and deliberate indifference to the safety and well-being of inmates at EMCF, specifically Decedent.

### *Edward Boyd's Assault and Death*

29.    Plaintiff incorporates all allegations in Paragraphs 1 through 28 hereinabove.

30.    On or about March 18, 2024, Decedent was brutally attacked by inmates affiliated with the Gangster Disciples Nation STG at East Mississippi Correctional Facility (EMCF). After the gang-attack, Decedent was discovered unresponsive in a cell, covered in blood, with "obvious stab wounds." On March 19, 2024, Decedent was pronounced dead at approximately 5:41 a.m.

31.    Since discovery has not commenced, it is currently uncertain whether Decedent was attacked on the night of March 18, 2024, or the morning of March 19, 2024. Camera H6B PTZ-620 shows the incident occurred March 18, 2024, at approximately 9:44 p.m. (camera time). However, MTC created a "timeline breakdown," asserting the video time was incorrect, and the assault occurred on March 19, 2024, at approximately 3:57 a.m. ("actual time").

32.    MTC produced a 10-minute clip from 0944 – 0954 March 18, 2024 (camera time), or 2:30 a.m. – 6:03 a.m. March 19, 2024 ("actual time"), of video footage of the incident. MTC's "timeline breakdown" referenced footage that was not produced for reasons currently unknown. MTC excised footage from 0810 – 0944, and 0954 – 1142, March 18, 2024 (camera time), or from

2:30 – 3:57 a.m., and 4:17 – 6:03 a.m., March 19, 2024 ("actual time").

33.    According to video footage,[9] MTC and its employees failed to protect Decedent from harm and death when approximately ten (10) Gangster Disciples carried out a gang-attack against Decedent in plain view of surveillance camera on or about March 18 and/or March 19, 2024.[10] In plain view of surveillance cameras, inmates moved throughout the Unit without restriction. The Unit was a free-for-all with no intervention by correctional officers.

34.    During the assault, Decedent noticeably struggled to stand due to his injuries, and he fell face-first onto the concrete ground in plain view of surveillance footage.[11] After the gang-attack, a group of inmates dragged Decedent's body into a cell where they left him to die. Afterward, video footage captured an inmate walking through the Unit carrying a trash bag; other inmates cleaned Decedent's blood off the ground, all in plain view of surveillance footage.[12]

35.    According to video footage, officers failed to respond, intervene, or protect Decedent while Gangster Disciples brutally assaulted him in plain view of the surveillance camera. According to video footage, inmates freely entered and exited others' cells, including the cell that Decedent was dragged into and left to die on March 18 and/or March 19, 2024.

36.    Upon information and belief, Defendants failed to adequately supervise inmates in Bravo Unit B where Gangster Disciples attacked and killed Decedent. As stated above, discovery has not yet commenced, so it is unclear whether an officer was at his or her designated post monitoring Bravo Unit B, or whether an officer was assigned to the post and simply ignored the savage beating as approximately ten (10) inmates attacked Decedent in plain view. EMCF's

---

[9] Camera H6B PTZ-620 – MTC Clip titled, "Edward Boyd Homicide 03-19-24 Incident clip%5B."
[10] According to Camera H6B PTZ-620, Decedent's attack occurred March 18, 2024, at 9:44 p.m. (camera time). According to MTC's "timeline breakdown," the attack occurred March 19, 2024, at 3:57 p.m. (actual time).
[11] According to Camera H6B PTZ-620, Decedent fell face-first March 18, 2024, at 9:47 p.m. (camera time). According to MTC's "timeline breakdown," Decedent fell face-first March 19, 2024, at 4:00 a.m. (actual time).
[12] According to Camera H6B PTZ-620, this occurred March 18, 2024, from 9:51 until 9:54 p.m. (camera time). According to MTC's "timeline breakdown," this occurred March 19, 2024, from 4:14 until 4:17 a.m. (actual time).

Original Complaint

understaffing issues are rampant and often result in violent consequences, including Decedent's injuries and death as described herein.

37.    It is well-documented that cell doors in most all EMCF units can easily be "rigged" to remain unlocked. In most instances, locks are not operational, allowing inmates to leave their cells at any time and enter others' unknowingly. Correctional officers failed to prevent inmates from entering other inmates' cells and failed to conduct security counts or rounds to ensure the safety of the inmates, specifically, Decedent.

38.    MTC and MDOC policies and procedures define various count types and frequencies. Per MDOC policy, the Count Log is a document used to record "all certified, formal, and informal counts." Per MTC policy on Inmate Count Procedures, staff ***shall ensure they count a living, breathing person***. MDOC policy requires certified counts at every shift change. Per MDOC and MTC policy, formal counts are scheduled counts conducted at specified times, including *every hour* from 2:00 a.m., until 7:00 a.m. (shift change certified count), 10:00 a.m., 12:00 p.m., 4:00 p.m., 7:00 p.m. (shift change certified count), 10:00 p.m., and 12:00 a.m. According to MDOC and MTC policies, informal counts are scheduled or unscheduled counts and shall occur between formal and certified counts and during night hours, at minimum. MTC policy requires at least three (3) formal counts for each 24-hour period, at least one (1) formal count per shift, and no more than twelve (12) hours may elapse between counts. Upon information and belief, correctional officers failed to conduct ***any*** count according to policy and procedure from the time of Decedent's attack until he was found unresponsive on March 19, 2024. As a direct and proximate result, the Decedent died.

39.    Defendants' documented history of mismanaging EMCF, combined with lack of logbooks, count slips, video footage, or other documentation reinforces the actuality of guards

failing to conduct security counts or rounds as required, failing to keep a logbook and count slip, and failing to protect inmates from harm, specifically Decedent.

40.    As per its *defacto policy*, EMCF was understaffed on March 18 and March 19, 2024. MTC has a pattern and practice of understaffing its prisons, specifically EMCF. Prior incidents and lawsuits against MTC demonstrated that understaffing placed staff and inmates, specifically Decedent, at risk of harm and death. Despite this knowledge, MTC continued to understaff the facility, resulting in Decedent's death.

41.    According to Correctional Officer ("CO") Bell's written statement, CO Bell discovered Decedent unresponsive in a cell while conducting the 5:00 a.m. certified security count[13] on Bravo on March 19, 2024. According to Bell, upon entering the Unit, offenders in B-Zone notified of assistance needed in Cell 107. Bell discovered Decedent lying unconscious with eyes "wide opened." Bell reported the Decedent was "lifeless and blue with no pulse," and "the last time" seeing Decedent "alive and well was around 4:00 a.m. count." No count slips, logbooks, or other evidence of Decedent "alive and well" at 4:00 a.m. has been produced. Upon information and belief, *no count* was conducted at or near 4:00 a.m.

42.    According to video footage and witness statements, CO Bell's report that Decedent was "alive and well" at 4:00 a.m. was wholly ***false***. According to MTC's "timeline breakdown," *no 4:00 a.m. count was conducted*. CO Duncan and Killen confirmed Decedent had *"blood all over"* and *"obvious stab wounds"* when discovered March 19, 2024. Further, video footage showed inmates forcing Decedent into Cell 107 at 9:48 p.m. March 18, 2024 (camera time), or 4:01 a.m. March 19, 2024 ("actual time"). Regardless of which time is accurate, Decedent was not

---

[13] A certified count is when correctional officers actually verify the inmate's identity by checking the inmate's ID and bed roster, confirming that inmates are in their respective cells/beds. After a certified count, the numbers are sent to Central Control to coordinate and ensure that everybody is accounted for.

Original Complaint

"alive and well" at 4:00 a.m. Whether Bell falsified her report is currently unknown, though MTC

historically employs officers who become compromised by gang affiliated inmates.

43.    MTC has a documented history of employing compromised correctional officers.

Inmates have essentially held their own "job fairs," recruiting gang affiliated correctional officers.

"All they had to do was find a young girl or young guy on Facebook and recruit them. As long as

they didn't have a criminal record, they could get a job. They'd come in, bringing in contraband

and stuff, and then get fired or leave."[14] Gang members even paid for compromised guards to live

nearby in apartments near EMCF.[15] According to Naidow's 2017 deposition testimony:

> Q:    Did you ever – were you ever able to substantiate that the
>        inmates were recruiting correctional officers?
> A:    We did have a couple instances of officers that were caught
>        up and were found living in some—there's some apartments
>        right down from—right down from the prison in Meridian
>        that were gang affiliated.

*Gipson v. Management & Training Corporation, et al*, S.D. Miss., No. 3:16-cv-624-DPJ-
FKB, Deposition of Matthew Naidow, August 4, 2017, p. 60 lines 11-18.

44.    Decedent's death resulted in little to no change. A Critical Incident Debriefing

Form conveyed MTC's plans to avoid similar incidents, reporting, "*no corrective action deemed

necessary,*" and *additional training on importance of security rounds and logging information in

logbook.* (emphasis added).

45.    Had Defendants adequately staffed EMCF with qualified, trained, and supervised

guards – or simply guards that did not facilitate gang-attacks – on March 18 and March 19, 2024,

and or if the correctional officers conducted security rounds and counts as required, Decedent

would not have been attacked, and or Decedent would not have died from the attack.

---

[14] *Gipson v. Management & Training Corporation, et al*, S.D. Miss., No. 3:16-cv-624-DPJ-FKB, Deposition of Matthew Naidow, August 4, 2017, p. 59 lines 15-25.
[15] *Gipson v. Management & Training Corporation, et al*, S.D. Miss., No. 3:16-cv-624-DPJ-FKB, Deposition of Matthew Naidow, August 4, 2017, pp. 59-61.

Original Complaint

46.     What is particularly disturbing is either an MTC employee watched the surveillance footage of the attack and ignored the incident, or MTC completely failed to have anyone in that position. As a result of Defendants' failure to protect inmates from harm by their refusal to properly staff EMCF and conduct required security rounds, Decedent died. Such actions were negligent, grossly negligent, and with a deliberate indifference to the safety of inmates, specifically Decedent.

## § 1983 CAUSES OF ACTION:

47.     Plaintiff incorporates all allegations in Paragraphs 1 through 46 hereinabove.

48.     Defendant MTC had the responsibility and duty to supervise, oversee, and control the training and job performance of staff, as well as the daily operations of EMCF. Defendants had a duty to ensure that EMCF was maintained in a safe condition, suitable for human occupation and compliant with constitutional requirements. Defendants had the duty to ensure that the officials acted in compliance with the laws and Constitutions of the State of Mississippi and of the United States, and did not deprive inmates of their rights guaranteed under the United States Constitution and laws. This included the duty to ensure that the conditions of inmate confinement did not impose what may constitute cruel and unusual punishment.

49.     By and through Defendants' deliberate indifference to the safety of Decedent on or about March 18, 2024, and establishment of customs, policies and practices which created unconstitutional conditions of confinement, Defendants MTC and Doe Defendants 1-100 violated the clearly established constitutional rights of Decedent, including but not limited to:

a)     Right to be free from cruel and unusual punishment under the 8th and 14th Amendments;

b)     Right not to be deprived of liberty without due process of law;

c)     Right to be safe and protected from injury while in Defendants' custody;

d)     Right to be protected by the prison officials and guards while under their control;

Original Complaint

e)    Right to be free from excessive and unreasonable force; and

f)    Right to timely and adequate medical treatment.

50.    Defendant John Does 1-100's actions were not objectively reasonable. At all times relevant, Doe Defendants were acting under the color of state law.

51.    As a direct and foreseeable result of Doe Defendant 1-100's actions, Decedent died, and Plaintiff suffered damages, including but not limited to Decedent's death, his emotional distress, mental anguish, pain and suffering, and heirs' damages under the wrongful death statute.

52.    Defendant MTC, by and through Doe Defendants in their individual and official capacities, established customs, policies and procedures which directly and proximately caused the deprivation of Decedent's constitutional rights as alleged herein. Defendants were deliberately indifferent to the safety of Decedent and other EMCF inmates. MTC maintained and operated EMCF in such a manner that the conditions of confinement resulted in a comprehensive and pervasive pattern of serious deficiencies in providing for the basic human needs of the inmates detained at EMCF in every respect.

53.    Such unwritten policies, customs, and practices include but are not limited to:

a)    Failing to adequately staff EMCF with trained and qualified guards assigned to the housing units and allowing EMCF to be understaffed;

b)    Inadequate and improper procedures and practices in screening, hiring, training, supervising, and disciplining officers who practice, condone, or use excessive force upon EMCF inmates in violation of their constitutional rights;

c)    Inadequate and improper procedures, policies, and practices for investigating improper activities by correctional officers either through offender complaints of misconduct or through internally-initiated complaints or investigations which permits guards to aid and abet gang members housed at EMCF;

d)    Inadequate or improper procedures, policies and practices for identifying and taking appropriate action against correctional officers in need of re-training,

corrective measure, reassignment or other non-disciplinary actions, through a positive or early warning system designed to prevent violations of inmates' rights;

e)      Condoning and allowing EMCF correctional officers to allow and/or facilitate inmate assaults;

f)      Failing to institute proper gang management policies and procedures;

g)      Failing to prevent and/or investigate threats of violence made against inmates by other inmates which are reported to EMCF officials;

h)      Failing to establish policies and procedures to limit the flow of illegal contraband into the facility, including but not limited to drugs, weapons, and cell phones, all of which contributed to the atmosphere of violence at EMCF;

i)      Allowing inmates to compromise cell doors and permitting inmates to leave their cells any time, even when they are supposed to be on lockdown, which contributed to the atmosphere of violence which existed on the dates of Plaintiff's assaults;

j)      Failing to make proper rounds/cell checks within the established guidelines to ensure inmates' safety;

k)      Improper classification and housing of inmates including the failure to separate inmates with STG history and documented assaults; and

l)      Regularly denying and delaying access to timely and adequate medical care and treatment, including life-saving medical assistance.

54.      Upon information and belief, MTC, through Doe Defendants 1-100, had prior knowledge that Decedent was at risk of harm and Gangster Disciples planned to carry out a gang attack against Decedent, or that such an attack was imminent; yet Defendants chose to take no action to prevent the attack. Defendants were deliberately indifferent to the safety of EMCF inmates, particularly Decedent. As a direct and foreseeable result of actions and inactions of Defendants MTC and Doe Defendants 1-100 to take necessary steps to prevent the attack, Decedent died, and Plaintiff suffered the damages alleged herein.

55.      Correctional officers, including the Doe Defendants, acted, or failed to act, in accordance with official policies, customs and practices of MTC, or at the direction of, and with

Original Complaint

the approval of these officials, in depriving Decedent of his rights as described herein. The policies, practices and customs were moving forces in Defendant and its employees' action and inaction, with deliberate indifference to Decedent's constitutional rights, welfare, and safety.

56.    From Defendants MTC and Doe Defendants 1-100, jointly and severally, Plaintiff seeks recovery of all compensatory and punitive damages to which the Estate of Edward Boyd is entitled as a result of the conditions of Decedent's confinement, and damages suffered therefrom.

## NEGLIGENCE/GROSS NEGLIGENCE

57.    Plaintiff incorporates all allegations in Paragraphs 1 through 56 hereinabove.

58.    At all times relevant, Defendant and Doe Defendants, as their employees, had a duty to exercise ordinary care for EMCF prisoners, including Decedent. MTC and Doe Defendants breached that duty by failing to use ordinary care a reasonable person would to avoid and prevent injury to others, i.e. in the case *sub judice*, provide appropriate, reasonable, necessary supervision to avoid and prevent injury – the failure of which led directly to incontrovertible permanent damage sustained by Plaintiff. This breach was so egregious as to amount to gross negligence.

59.    Defendants and their employees were also negligent in failing to monitor Decedent's Cell and/or Housing Unit on a routine basis and failing to conduct security checks as required. Defendants failed to provide appropriate, reasonable, and necessary supervision to avoid and prevent harm to inmates, specifically Decedent. Defendants understaffed EMCF and did not manage the gang population and violent atmosphere with adequate or trained and qualified guards.

60.    Had Defendants performed security checks in accordance with policy, Decedent's attack would not have occurred or would have been interrupted, or Decedent would have been discovered in time to render medical assistance. Instead, Defendants did not conduct security checks as required to avoid and prevent injury to others, and as a result, Decedent died.

Original Complaint

61.     Decedent's death was the reasonably foreseeable outcome of Defendants' and their employees' acts and omissions. These acts and/or omissions were substantial factors in causing Decedent's death, and the accompanying damages suffered by Plaintiff.

## NEGLIGENT HIRING AND SUPERVISION

62.     Plaintiff incorporates all allegations in paragraphs 1 through 61 hereinabove.

63.     Plaintiff alleges Defendant MTC negligently, or with gross negligence, hired, supervised, and retained its employees and agents, *inter alia*, by a) failing to care for and ensure Decedent's health, safety and well-being while at EMCF; b) failing to properly train, supervise, discipline, retain, hire and/or discharge its employees, agents, and/or representatives; and c) were otherwise negligent or grossly negligent in their care and safety of Decedent, and as a direct and proximate result, the Plaintiff sustained the harms alleged herein.

## RESPONDEAT SUPERIOR

64.     Plaintiff incorporates all allegations in Paragraphs 1 through 63 hereinabove.

65.     Defendant MTC and Doe Defendants 1-100 acted with negligence, gross negligence, and/or intentionally by allowing or failing to prevent Decedent's death. At all times relevant, Defendant owed a duty to Decedent to ensure his health, safety, and well-being, and Defendants breached this duty. The actions and inactions of Defendant and/or Doe Defendants led directly to Decedent's death and injuries suffered by Plaintiff. MTC, as Doe Defendants' employers, is liable for their employees' actions which were undertaken during the course and scope of their employment.

## PUNITIVE DAMAGES

66.     Plaintiff incorporates all allegations in Paragraphs 1 through 65 hereinabove.

67.     Defendant MTC and Doe Defendants 1-100 acted in complete disregard for the Decedent's safety by acting in a negligent and or grossly negligent manner as previously described herein. The actions of these Defendants warrant punitive damages.

68.     Defendants' actions exhibited gross negligence and direct disregard for the safety of Decedent. Punitive damages should be awarded against Defendants. Defendants' tortious actions caused Decedent's wrongful death and Plaintiff's damages including but not limited to emotional distress, mental anguish, and pain and suffering.

### **PRAYER FOR RELIEF**

Plaintiff prays that upon a jury trial of this cause, the Court will award all relief due Plaintiff and the Estate of Edward Boyd as set forth herein, including but not limited to the following relief:

A.    Compensatory damages of, from and against the Defendants, each and severally, in amount to be determined by this Court;

B.    Punitive damages of, from and against the Defendants, in their individual capacities, in an amount to be determined by this Court;

C.    Payment of funeral and burial expenses;

D.    Reasonable attorney's fees and all costs of this court;

E.    Pre and post judgment interest; and

F.    Such other general and specific relief as appears reasonable and just in this cause.

RESPECTFULLY SUBMITTED, THIS the 11th day of March, 2025.

**JAMELA CARTHAN**

BY: _____

COURTNEY D. SANDERS

MERRIDA (BUDDY) COXWELL (MB# 7782)
COURTNEY D. SANDERS (MB# 106444)
**COXWELL & ASSOCIATES, PLLC**

Original Complaint

500 North State Street
Jackson, Mississippi 39201
Telephone: (601) 948-1600
Facsimile: (601) 948-7097
merridac@coxwelllaw.com
courtneys@coxwelllaw.com

CHARLES R. MULLINS (MB# 9821)
**MULLINS LAW FIRM**
1146 Lyncrest Avenue
Jackson, Mississippi 39202
(P): 601-672-1332
chuck@chuckmullinslaw.com
***Attorneys for Plaintiff***

Original Complaint